**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**

**MARCUS DEWAYNE DAVIS**                                                  **PLAINTIFF**

**v.**                                                         **CIVIL ACTION NO. 2:10cv271-KS-MTP**

**LAWRENCE KELLY,** *et al.*                                                **DEFENDANTS**

**REPORT AND RECOMMENDATION**

This matter is before the Court on the Motion for Summary Judgment [91] filed by Defendants Lawrence Kelly, Emmitt Sparkman, Ron King, Timothy Morris, Ronda Johnson, Dorcus McLeod and Diane Massey, and *sua sponte* for case management purposes. Having considered the submissions of the parties and the applicable law, the undersigned recommends that the Defendants' Motion [91] be **GRANTED**, and that the moving Defendants be dismissed from this action with prejudice. The undersigned further recommends that Defendant Patsy Moore be dismissed from this action without prejudice pursuant to Fed. R. Civ. P. 4(m).

**FACTUAL BACKGROUND**

Plaintiff Marcus Dewayne Davis, proceeding *pro se* and *in forma pauperis,* filed his civil rights Complaint [1] on November, 22, 2010, pursuant to 42 U.S.C § 1983. Plaintiff's claims occurred while he was a post-conviction inmate at the South Mississippi Correctional Institution ("SMCI") and the Mississippi State Penitentiary ("MSP").[1] *See* Omnibus Order [69] at 2. Plaintiff is currently incarcerated at the East Mississippi Correctional Facility ("EMCF"),

---

[1]Plaintiff testified that he was transferred from MSP to SMCI on or about August 25, 2009.

serving a sixty-year sentence on convictions of armed robbery and aggravated assault.[2]

In his complaint and amended complaint, and as clarified by his testimony at the *Spears*[3] hearing, Plaintiff alleges a claim of deliberate indifference for the denial of adequate medical treatment against Defendants Lawrence Kelly, Emmitt Sparkman, Ron King, and Timothy Morris. *See* Omnibus Order [69] at 2. More specifically, Plaintiff claims that these Defendants denied him mental health care after he was transferred from MSP to SMCI in August of 2009. *Id.* at 2-3. In addition, Plaintiff alleges that Defendant King denied him mental health care in retaliation for filing grievances and complaints. *Id.*

Plaintiff also claims Defendants Ronda Johnson, Dorcus McLeod, and Dianne Massey denied him due process. *See* Omnibus Order [69] at 3. Specifically, Plaintiff claims he was denied due process in certain disciplinary proceedings because he was not provided proper notice of the hearings and was not allowed to call witnesses. *Id.* Plaintiff seeks compensatory, nominal, and punitive damages, and injunctive relief. *Id.* Defendants have moved for summary judgment on the above claims.[4] *See* Mot. [91].

---

[2]*See* http://www.mdoc.state.ms.us/InmateDetails.asp?PassedId=K4440 (last visited June 26, 2012). Plaintiff testified that he was transferred to EMCF on or about July 26, 2011.

[3]*Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). Plaintiff's *Spears*, or omnibus hearing took place on October 25, 2011.

[4]Plaintiff also alleges claims for excessive force and retaliation against Defendants Mark McClain, David Clark, Adrian Keys, and Lisa Heandon, and a claim for failure to protect against Defendants Patsy Moore, Theresa Seabrook, Regina Hancock, Penny Bufkin, and Lisa Heandon. *See* Omnibus Order [69]. These Defendants have not moved for summary judgment. *See* Memo. [92] at 2, n.1.

Moreover, Defendants Mark McClain and Patsy Moore (both former MDOC employees) are not before the court. The docket reflects that Mark McClain was personally served on November 22, 2011; however, he has not responded to the complaint or otherwise appeared. *See*

**STANDARD FOR SUMMARY JUDGMENT**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is proper "where a party fails to establish the existence of an element essential to his case and on which he bears the burden of proof." *Washington v. Armstrong World Indus.*, 839 F.2d 1121, 1122 (5th Cir. 1988). "A complete failure of proof on an essential element renders all other facts immaterial because there is no longer a genuine issue of material fact." *Id*.

This Court may grant summary judgment only if, viewing the facts in a light most favorable to the Plaintiff, the Defendants demonstrate that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995). If the Defendants fail to discharge the burden of showing the absence of a genuine issue concerning any material fact, summary judgment must be denied. *John v. State of Louisiana*, 757 F.2d 698, 708 (5th Cir. 1985). The existence of an issue of material fact is a question of law that this Court must decide, and in making that decision, it must "draw

---

Return [77].

The last known address for Patsy Moore provided by Defendants is a P.O. Box, thus personal service is not available. The Court served Ms. Moore by mail pursuant to Miss. R. Civ. P. 4(c)(3) at the P.O. Box provided by Defendants. *See* Notice [46], Summons [48]. However, service of process by mail is only effective when the Defendant waives service under Fed. R. Civ. P. 4(d), or when the Defendant timely returns the notice and acknowledgment form under Miss. R. Civ. P. 4(c)(3). *See* Fed. R. Civ. P. 4(e)(1). Ms. Moore has not done so. Plaintiff was advised that if he failed to provide an alternate address for service of process for Ms. Moore by December 15, 2011, she may be dismissed from this action without prejudice pursuant to Fed. R. Civ. P. 4(m). *See* Omnibus Order [69]. Plaintiff has failed to provide an alternate address for Ms. Moore or otherwise serve her with process.

inferences most favorable to the party opposing the motion, and take care that no party will be improperly deprived of a trial of disputed factual issues." *Id*. at 712 (quoting *U. S. Steel Corp. v. Darby*, 516 F.2d 961, 963 (5th Cir. 1975)).

There must, however, be adequate proof in the record showing a real controversy regarding material facts. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original). Thus, "[c]onclusory allegations," *Lujan v. National Wildlife Federation*, 497 U.S. 871, 902 (1990), unsubstantiated assertions, *Hopper v. Frank*, 16 F.3d 92, 96-97 (5th Cir. 1994), or the presence of a "scintilla of evidence," *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994), are not enough to create a real controversy regarding material facts. In the absence of proof, the Court does not "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

## ANALYSIS

Plaintiff's claims are before the Court pursuant to 42 U.S.C. § 1983. However, Section 1983 "neither provides a general remedy for the alleged torts of state officials nor opens the federal courthouse doors to relieve the complaints of all who suffer injury at the hands of the state or its officers." *White v. Thomas*, 660 F.2d 680, 683 (5th Cir. 1981). Rather, "[i]t affords a remedy only to those who suffer, as a result of state action, deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Id.* at 683 (quoting 42 U.S.C. § 1983).

## I. Whether Defendants Kelly, Sparkman, Morris, and King Were Deliberately Indifferent to Plaintiff's Serious Medical Needs

Plaintiff alleges that Defendants Lawrence Kelly (retired Superintendent of MSP), Emmitt Sparkman (Deputy MDOC Commissioner and current Superintendent of MSP), Timothy Morris (Warden of MSP), and Ron King (Superintendent of SMCI) were deliberately indifferent to his mental health needs in violation of the Eight Amendment. Specifically, he claims he was denied mental health care after he was transferred from MSP to SMCI in August 2009. Plaintiff testified during the omnibus hearing that while incarcerated at MSP, he was enrolled in a mental health step-down program.[5] Plaintiff claims that Defendant Kelly transferred him from MSP to SMCI to prevent him from receiving mental health treatment. Plaintiff alleges that Superintendent Sparkman was aware of Plaintiff's mental health care needs, but failed to prevent him from being transferred to SMCI. Plaintiff alleges that he sued Warden Morris because Plaintiff filed an ARP grievance regarding his removal from the step-down program and Morris denied him relief.

Plaintiff sued Superintendent King because he claims he was denied adequate mental health care at SMCI. He claims SMCI has no treatment plan for mentally ill inmates and that in Unit 8, inmates are confined behind solid steel doors for twenty-three hours a day.[6]

---

[5]Plaintiff testified that the program was created pursuant to court order to provide mental health care to mentally ill inmates housed in Unit 32.

[6]Plaintiff's allegations regarding SMCI are set forth more fully in his ARP grievance attached to his response in opposition to Defendants' Motion [91]. *See* [96-2] at 10-21. For example, Plaintiff claims that SMCI's training of staff for medical treatment of inmates was inadequate, and even if the training were adequate, the staff failed to conform to the required standards of medical care; that SMCI's staff did not adequately screen inmates for mental health issues; that SMCI's mental health services were not carried out in a timely fashion; that SMCI's medical staff was unqualified to provide medical/mental health care; that SMCI's security staff

A prison official may be held liable for deliberate indifference "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *see also Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994). Unsuccessful medical treatment, negligent treatment, or medical malpractice does not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. *See Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991); *Hall v. Thomas*, 190 F.3d 693, 697 (5th Cir. 1999); *Stewart v. Murphy*, 174 F.3d 530, 537 (5th Cir. 1999).

To show deliberate indifference, the prisoner must show that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). "Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." *See Banuelos*, 41 F.3d at 235 (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 193-95 (5th Cir. 1993)).

According to Defendants' sworn affidavits, providing health care is the responsibility of onsite health care providers, and these Defendants did not play a personal role in providing inmates with medical/mental health care. *See* Exs. A-D to Motion [91-1], [91-2], [91-3], [91-4]. Further, even if Defendants had desired to provide Plaintiff with medical care, they maintain that

---

prevented the medical staff from rendering adequate health care services; that the housing conditions at SMCI were "unsuited for extended confinement;" and that the restrictions on inmates' privileges at SMCI were "so severe and restrictive that they exacerbate the symptoms that mentally ill inmates exhibit." *Id.*

they did not have the authority to provide or deny Plaintiff the medical/mental care he believed he was entitled to. *Id.* Accordingly, Defendants argue they were not deliberately indifferent to Plaintiff's medical needs.

The moving Defendants' efforts to minimize, avoid, or delegate the responsibility to ensure that inmates are treated appropriately need not be addressed here, as Plaintiff's institutional and medical records indicate that he received adequate health care at SMCI. *See* Ex. F [94] to Motion [91]. In any case, he was not treated with deliberate indifference. The record and Dr. Gloria Perry's[7] sworn affidavit both indicate that Plaintiff saw a psychiatrist "on a regular basis" and regularly received mental health counseling at his request. *See* Ex. E to Motion [91-5]; Ex. F [94] to Motion [91]. Dr. Perry further asserts that Plaintiff received mental health medication daily and was described as "stable on medication" by the psychiatrist on July 7, 2011, his most recent visit.[8] *See* Ex. E to Motion [91-5].[9] The record reflects that Plaintiff saw the psychiatrist, Dr. Parveen Kumar, approximately every ninety days after his arrival at SMCI in August 2009, through March 2011. In March 2011, Plaintiff began seeing Dr. Kumar

---

[7]Gloria Perry, M.D., is the Chief Medical Officer of the MDOC Office of Medical Compliance. She is not named as a defendant in this action. *See* Ex. E to Motion [91-5].

[8]Plaintiff informed his psychiatrist, Dr. Parveen Kumar, that he was "doing alright." Dr. Kumar noted that Plaintiff was pleasant, calm and cooperative and in no distress, and that he denied suicidal ideas and denied depressive or psychotic symptoms. *See* Ex. F [94] to Motion at 399-400.

The Court notes that on several occasions Plaintiff complained to mental health staff that he was not receiving his prescribed medications. However, the record also reflects that on several occasions it was reported that Plaintiff was flushing his medication down the toilet. *See* Ex. F [94] to Motion.

[9]Dr. Perry's affidavit was prepared on July 27, 2011, which was just before or around the same time as Plaintiff's transfer to EMCF.

7

approximately once a month. In May of 2011, Plaintiff started seeing Dr. Kumar once every few weeks. Plaintiff attempted and/or threatened suicide several times between May 2011 and his transfer to EMCF at the end of July of 2011. *See* Ex. F to Motion [94].

In addition to Plaintiff's appointments with Dr. Kumar, Plaintiff regularly saw other mental health personnel at SMCI for counseling and other treatment. *Id.* It was noted several times by mental health personnel that Plaintiff may be a malingerer and that his sick call requests may be a ploy for attention. *Id.* at 109, 134, 170. Also, Plaintiff's counseling appointments were cancelled and/or rescheduled on a few occasions due to security reasons; once, he stabbed an officer when he was removed from his cell, and attempted to stab the superintendent on another occasion when he was taken out of his cell. *Id.* at 118-19, 134, 170.

Plaintiff essentially disagrees with his mental treatment at SMCI. However, this does not constitute a claim for deliberate indifference. *See Banuelos*, 41 F.3d at 235; *Varnado*, 920 F.2d at 321; *Hall*, 190 F.3d at 697; *Stewart*, 174 F.3d at 537. The Plaintiff is not entitled to the best medical treatment, and negligent treatment does not amount to a constitutional violation. *Id.* Moreover, the Court notes that Plaintiff is no longer incarcerated at SMCI, where he claims the treatment was inadequate. He is now housed at EMCF, which is designated as a mental health facility. Plaintiff testified that he is receiving mental health treatment at EMCF.

Plaintiff also alleges Defendant King failed to grant him relief through the ARP and denied him medical care in retaliation for filing grievances and complaints. *See* Omnibus Order [69] at 3. Plaintiff testified during his omnibus hearing that "everything" King did while Plaintiff was incarcerated at SMCI "was based on retaliation."

A claim for retaliation under Section 1983 requires Plaintiff to show: (1) a specific

8

constitutional right; (2) the Defendant's intent to retaliate against the Plaintiff for exercising that right; (3) a retaliatory adverse act; and, (4) causation. *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999). Retaliation against a prisoner is actionable only if it is capable of deterring a prisoner of ordinary firmness from further exercising his constitutional rights. *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008). An inmate must allege more than the minimal retaliation to proceed with a claim. *Morris v. Powell*, 449 F.3d 682, 684-85 (5th Cir. 2006). A single incident involving a minor sanction is insufficient to prove retaliation. *Id.* at 685 (citing *Gibbs v. Kings*, 779 F.2d 1040, 1046 (5th Cir. 1986)). An inmate's personal belief that he is a victim of retaliation is not sufficient to support a claim of retaliation. *Jones*, 188 F.3d at 325. Conclusory allegations are also insufficient to establish a claim of retaliation. *Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir. 1992).

Plaintiff's allegations regarding retaliation by Defendant King are conclusory, and therefore, without merit. Mr. King's sworn affidavit reflects that he does not have authority to order or deny medical/mental care for inmates. *See* Ex. C to Motion [91-3]. Mr. King does not have any personal involvement in providing inmates with medical/mental care. *Id.* In addition, as previously mentioned, Plaintiff received adequate mental health care while he was incarcerated at SMCI. *See* Ex. E to Motion [91-5]; Ex. F [94] to Motion [91]. Plaintiff's subjective belief that he was the victim of retaliation by Defendant King does not satisfy the required standards set forth in *Jones*. *See Jones*, 188 F.3d at 325. Therefore, Plaintiff's retaliation claim against Defendant King is subject to dismissal.

Finally, Plaintiff does not have a constitutional right to a grievance procedure, and has no due process liberty interest right to having his grievance resolved to his satisfaction. *See Geiger*

*v. Jowers*, 404 F.3d 371, 374-75 (5th Cir. 2005); *Jones v. Shabazz*, No. H-06-1119, 2007 WL 2873042, at *21 (E.D. Tex. Sept. 28, 2007); *see also Hoye v. Nelson*, No. 4:07cv044-M-B, 2007 WL 1321964, at *1 (N.D. Miss. May 3, 2007) (internal citations and quotations omitted) (stating that the Constitution does not demand "error-free" decision making). Therefore, Plaintiff's claims that King and Morris failed to grant him relief through the ARP are without merit.

## II. Whether Defendants Massey, McLeod and Johnson Violated Plaintiff's Due Process Rights

Plaintiff alleges that Defendants Diane Massey (Lieutenant at SMCI)[10], Dorcus McLeod (Correctional Officer at SMCI), and Ronda Johnson (Correctional Officer at SMCI) violated his due process rights in connection with five Rule Violation Reports ("RVRs") and the related disciplinary hearings.[11] *See* Ex. C [96-3] at 27-36. More specifically, Plaintiff alleges that these Defendants denied him due process by failing to give him notice of the charges, failing to conduct an investigation, and by not allowing him to present witnesses or evidence on his behalf. Plaintiff was found guilty of all five of the aforementioned rule violations, and as a result, Plaintiff lost his privileges from approximately June of 2011 to June of 2012, and was placed in disciplinary segregation for twenty days. *Id.*

Liberty interests protected by the Due Process Clause "will be generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995).

---

[10]Defendant Massey served as the hearing officer at Plaintiff's disciplinary hearings. *See* Massey's Affidavit, Ex. H to Motion [91-8].

[11]The relevant RVRs include No. 1141070, 1141071, 1141072, 1141073, and 1141094. *See* Ex. C [96-3] at 27-36; Ex G to Motion [91-7].

10

Plaintiff has failed to allege a restraint which imposed an atypical and significant hardship in relation to the ordinary incidents of prison life. The record reflects that Plaintiff was placed in disciplinary segregation for twenty days, and he was denied certain privileges for approximately one year. "[A]dministrative segregation, without more, does not constitute a deprivation of a constitutionally cognizable liberty interest." *See Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995); *Hurns v. Parker*, 165 F.3d 24, 1998 WL 870696, at *1 (5th Cir. Dec. 2, 1998).

Plaintiff has no protected liberty interest in his security classification, and has no right to facility privileges. *See Wilkerson v. Stadler*, 329 F.3d 431, 435-36 (5th Cir. 2003) (stating that the Fifth Circuit "has continued to hold post-*Sandin* that an inmate has no protectable liberty interest in his classification"); *Wilson v. Bundy*, 976 F.2d 957, 958 (5th Cir. 1992) (citing *Moody v. Baker*, 857 F.2d 256, 257-58 (5th Cir.1988)) ("A prison inmate does not have a protectable liberty or property interest in his custodial classification."); *Nathan v. Hancock*, No. 11–60811, 2012 WL 1758573, at *1 (5th Cir. May 17, 2012) (citations omitted) ("Likewise, a prisoner's change in custody status, including his placement in disciplinary segregation or lock-down; the loss of recreation and commissary privileges; and the imposition of cell restrictions, does not implicate a liberty interest because those punishments do not represent 'the type of atypical, significant deprivation in which a State might conceivably create a liberty interest'"); *see also Williams v. Geo Group, Inc.*, No. 4:08cv67-HTW-LRA, 2008 WL 2724889, at *1 (S.D. Miss. July 10, 2008) ("The classification of Plaintiff in a certain level of custody and the loss of prison privileges are not an 'atypical and significant hardship' of prison life.").

Accordingly, Plaintiff's allegations regarding administrative segregation and the denial of privileges as a result of the RVRs fail to amount to a constitutional violation.

11

Aaccording to the RVRs and the affidavit of Diane Massey, Plaintiff was given notice of each rule violation and disciplinary hearing and was given an opportunity to appear and participate in the hearing. *See* Ex. C [96-3] at 27-36; Ex. H to Motion [91-8]. However, Plaintiff refused to sign the RVRs or acknowledge receipt and notice of the hearings and refused to appear or defend himself at the hearings. *Id.* In addition, Plaintiff refused to make any statements or sign any documents concerning the disciplinary hearings. *Id.*

Finally, the court notes that Plaintiff's request for injunctive relief regarding the RVRs appears to be moot. Commissioner Epps ordered the RVRs to be dismissed and removed from Plaintiff's record, and where possible, any disciplinary action taken to be reversed.[12] *See* Ex. C [96-3] at 2-3.

### III. Whether Defendants are Entitled to Qualified Immunity

Although Defendants have raised the defense of qualified immunity, "if it becomes evident that the plaintiff has failed to state or otherwise to establish a claim, then the defendant is entitled to dismissal on that basis." *Wells v. Bonner*, 45 F.3d 90, 93 (5th Cir. 1993) (citing *Siegert v. Gilley*, 500 U.S. 226, 231-33 (1991)); *see also Sappington v. Bartee*, 195 F.3d 234, 236 (5th Cir. 1999). Because Plaintiff's allegations of deliberate indifference to his serious medical needs, retaliation, and due process violations are not cognizable as constitutional claims, the issue of whether the Defendants are entitled to qualified immunity on these claims is moot. *See Wells*, 45 F.3d at 93.

---

[12]It appears Mr. Epps took this action in response to correspondence initiated by Margaret Winters of the ACLU due to the conduct of officers who are not parties to this action. *See* Ex. C [96-3] at 2-3.

12

**RECOMMENDATION**

For the reasons stated above, it is the recommendation of the undersigned that Defendants' Motion for Summary Judgment [91] be **GRANTED**, and that the following Defendants be dismissed with prejudice: Lawrence Kelly, Emmitt Sparkman, Ron King, Timothy Morris, Ronda Johnson, Dorcus McLeod, and Dianne Massey.

The undersigned recommends that Defendant Patsy Moore be dismissed from this action without prejudice pursuant to Fed. R. Civ. P. 4(m) for Plaintiff's failure to serve process.[13]

The undersigned recommends that the following claims should be set for jury trial before District Judge Keith Starrett:[14] Plaintiff's claims for excessive force and retaliation against Defendants Mark McClain, David Clark, Adrian Keys, and Lisa Heandon, and his claim for failure to protect against Defendants Theresa Seabrook, Regina Hancock, Penny Bufkin, and Lisa Heandon.

**NOTICE OF RIGHT TO OBJECT**

In accordance with the rules and 28 U.S.C. § 636(b), any party within fourteen (14) days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge and the opposing party. The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. The parties are hereby notified that failure to file written objections to the proposed

---

[13] *See supra*, footnote 4.

[14] These Defendants did not move for summary judgment. *See supra*, footnote 4.

findings, conclusions, and recommendations contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. 28 U.S.C. § 636(b)(1); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).[15]

THIS the 18th day of July, 2012.

s/ Michael T. Parker<br>
United States Magistrate Judge

---

[15]*Douglass* referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.